UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAWAN D. ROWEMANNS, SR.,<br><br>Petitioner,<br><br>vs.<br><br>WARDEN J. KATAVICH,<br><br>Respondent. | No. 2:15-cv-2243-JAM-EFB P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner proceeding without counsel with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges a judgment of conviction entered against him on March 17, 2005[1] in the Sacramento County Superior Court on charges of battery with serious bodily injury (Cal. Pen. Code § 243(d)) and battery (Cal. Pen. Code § 242). He seeks federal habeas relief on the following grounds: (1) juror misconduct which the trial court failed to address warrants reversal of his conviction; (2) the trial court did not give the jury proper instructions on superseding cause; (3) his trial counsel was ineffective in failing to request either an instruction on superseding cause or an evidentiary hearing on juror misconduct; and (4)

---

[1] The jury returned guilty verdicts against petitioner on March 30, 2005. Lodged Document "Clerk's Transcript Volume I of II" at 218-219. Petitioner fled the jurisdiction of the court shortly after the verdicts were handed down and he was not sentenced until November 16, 2012. Lodged Document "Reporter's Transcript, Volume 3 of 3" at 649-651.

1

the trial judge failed to perform his "ministerial" duties.² Upon careful consideration of the record and the applicable law, it is recommended that petitioner's application for habeas corpus relief be denied.

**I. Background**

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> A jury found defendant Dawan Donte Rowe–Manns guilty of battery with serious bodily injury (Pen.Code,1 § 243, subd. (d)) on Brandi Marshall (Brandi) and battery (§ 242) on her boyfriend, Zackary Doyle (Zack). In a court trial, the court found defendant had a prior strike conviction and sentenced him to 13 years in state prison.
>
> Defendant contends reversal of his conviction is required because of: (1) juror misconduct; (2) error in instructing the jury on causation; and (3) the cumulative prejudicial effect of the foregoing errors. We conclude defendant's failure to pursue his claim of juror misconduct in the trial court forfeits that issue for appeal. We also conclude that there was neither instructional error as asserted by defendant nor was there prejudice due to cumulative error.
>
> FACTUAL AND PROCEDURAL BACKGROUND
>
> During the afternoon of March 5, 2004, Brandi, her ten-year-old sister Megan, Zack, and Steven Caldwell arrived on bicycles outside the gate to the apartment complex where Brandi lived. Defendant and his wife also lived in the complex and were sitting in a car parked outside the gate. Brandi and Zack were acquainted with defendant and his wife. Brandi's friend Tara was parked nearby in her car.
>
> Brandi testified that as she walked over to speak with Tara, defendant approached her and Zack, yelling at Zack that he had been in defendant's apartment. Brandi screamed for help, opened the gate to the complex, and

---

² In his traverse, petitioner attached portions of a petition for review prepared by his appellate counsel for the California Supreme Court. ECF No. 15 at 12-17. Therein, petitioner also raised the claim that cumulative errors violated his right to a jury trial, due process, and a fundamentally fair trial. *Id*. at 12. It is unclear if petitioner is now attempting to raise this claim for the first time before this court. Regardless, this claim was not raised in his petition and will not be considered. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) ("A Traverse is not the proper pleading to raise additional grounds for relief."); *Lopez v. Dexter*, 375 F. App'x 724, 724 (9th Cir. 2010) (petitioner's habeas claim that "improperly surfaced for the first time in his traverse to the state's answer" was appropriately rejected on that basis).

> then ran back to aid Zack. Defendant struck Brandi on the right side of her face, beneath her right eye, causing Brandi to fall and hit her head on the cement, rendering her unconscious. As Brandi regained consciousness, she saw that her neighbor, Katherine Tucker, was holding a young girl who was trying to break away from her. Brandi described the girl as a short, skinny teenager with pigtails. Brandi, Megan, and Zack got into Tara's car and Tara drove them to Zack's residence where they called 911.
>
> Megan, 11 years old at the time of trial, testified that defendant struck Zack only once, but "another guy" also hit Zack. Defendant then struck Brandi once in the face below her eye, causing Brandi to fall and strike her head on the cement curb. While Brandi was on the ground a young girl was trying to hit Brandi and was pulling her hair.
>
> Brandi was treated at a hospital for facial bone fractures and the loss of a tooth from her partial plate.
>
> Katherine Tucker, who also lived in the complex, testified that upon returning to the complex she saw a small girl on top of Brandi, repeatedly hitting Brandi in the face. Tucker was able to pull the girl off Brandi.
>
> Deputy Sheriff Christopher Bittle responded to the 911 call and drove to Zack's home where he interviewed Brandi. Brandi gave no names, but said she was attacked by a black male and black female who were in a car. The black male got out from the passenger side and began yelling at Zack and then hit Zack in the face. When Brandi tried to intervene, the black female got out of the car and was yelling at her. The black male then struck Brandi, causing her to black out, but she did not know for how long. Brandi also said that a second black male and a black female came out from the complex, and the black male started hitting Zack. Two black females also hit Brandi in the face.
>
> Caldwell, who did not know defendant or his wife, testified that after defendant hit Zack, Brandi pushed defendant. The black female then got out of the driver's side of the car and she and Brandi pulled each other's hair. The black male struck Brandi and she fell to the ground crying and looking for her tooth.

*People v. Rowe-Manns*, No. C072576, 2014 WL 7334314, at *1–2 (Cal. Ct. App. Dec. 23, 2014), review denied (Feb. 25, 2015).

## II.  Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28

3

U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, ___ U.S. ___, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. *Id.* Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

/////

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[3] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412. *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of

/////

---

[3] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

§ 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, ___ U.S. ___, ___, 133 S.Ct. 1088, 1091 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny

relief." *Richter*, 562 U.S. at 98. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

**III. Petitioner's Claims**

    **A.    Juror Misconduct**

Petitioner contends that his convictions should be reversed because, during a recess, several jurors purportedly claimed that the trial was a 'colossal waste of time' and another asked 'where did he even hit her, anyway?' ECF No. 1 at 8-9.[4] The Court of Appeal rejected this claim because petitioner's counsel failed to seek any relief from the trial court after raising the issue for the first time. It reasoned:

> Defendant contends his convictions must be reversed because of juror misconduct. Not so.
>
> Prior to the giving of opening statements, the court instructed the jurors that they were not to discuss the case with anyone, including people with whom they lived, those whom they encountered from time to time, and the other jurors and alternates. The jurors were instructed that the first time they were to talk about the case would be when they were deliberating and all 12 were present.
>
> After the testimony was completed and both sides had rested, the prosecutor informed the court that while she was out sick the previous week, the prosecutor who was standing in for her told her of a potential problem involving a juror or jurors discussing the case and she wanted to know if the issue had been addressed in her absence. The court responded,

---

[4] Page number citations such as this one are to the page numbers reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

7

"I think it was discussed, but we never confronted the juror or jurors about it. And it seems a little late to be doing that now. [¶] I think in the realm of the interruption in the flow of the trial, because I overlooked it and then nobody else raised it again."

Because it was defense counsel who had first brought the potential juror misconduct to the court's attention, the court asked counsel to put on the record what she had been told. Counsel explained that on Thursday of the previous week, Katherine Tucker, a witness in the case, told counsel that while she, Tucker, was waiting in the hallway "the jurors were complaining about this being a colossal waste of time." Counsel further stated that after court concluded for the day and counsel was walking to her office, Tucker told her that a black male juror "had said something to the effect of where did he even hit her, anyway?" The person to whom the black male juror was speaking did not respond verbally. Counsel also explained that the reason she was informing the court of the out-of-court statements was that she was "duty bound" to do so.

The court then pointed out that after being informed by counsel of the above statements, it was the court's intention to question the juror about the incident and, depending on what the juror said, make a determination of what to do. The court stated it "expected [it] would simply admonish" the juror and remind the jury not to discuss the case. However, when court convened on Monday, and the prosecutor was still out sick, the matter "just slipped my mind and we just never got back to it." The matter was not raised again in the trial court.

Defendant argues that once the court was informed of potential juror misconduct, the court was bound to conduct a hearing to protect the integrity of the jury process. There was no error.

The California Supreme Court has pointed out that the "[F]ailure to raise the issue of juror misconduct and seek relief from the court on that basis results in a forfeiture of the issue on appeal." (*People v. Dykes* (2009) 46 Cal.4th 731, 808, fn. 22, italics added.) For example, in *People v. McIntyre* (1981) 115 Cal.App.3d 899, while the jury was deliberating, a local paper published an article about the trial. (*Id*. at p. 905.) Defendant moved for a mistrial, which the court denied because there was no evidence that any juror had read the article. (*Ibid*.) However, after denying the mistrial motion, the court queried the jurors on whether any of them had read the article. One juror stated he had read some of the article, but remembered very little about it. (*Ibid*.) The juror stated the article did not influence him and that he believed he could be fair. (*Ibid*.) The court asked defense counsel if he wanted to question the juror and counsel declined, saying he was satisfied and that he had "[n]othing further." (*Ibid*.)

On appeal, the defendant contended the trial court erred in not substituting the alternate juror after it was learned one juror "'committed misconduct'"

> by reading the article. (*People v. McIntyre*, supra, 115 Cal.App.3d at p. 905.) The appellate court found defendant forfeited the argument because after the juror was examined, defendant made no motion for a mistrial nor did he request substitution of the alternate juror. (*Id*. at p. 906.) Here, defense counsel brought the matter to the trial court's attention. But that is as far as she went. Counsel never asked for an evidentiary hearing, never sought substitution of an alternate juror, never moved for a mistrial on grounds of juror misconduct, and never brought the matter to the court's attention again. Clearly, counsel did not consider the matter of much importance. We conclude defendant's issue is forfeited.

*Rowe-Manns*, 2014 WL 7334314, at *2–3. This issue was raised again in a petition for review submitted to and summarily rejected by the California Supreme Court. Lodged Document "Petition for Review"; Lodged Document "Denial of the Petition for Review."

### 1. Applicable Legal Standards

#### a. Procedural Bar

The Anti-Terrorism and Effective Death Penalty Act of 1996 prevents federal courts from considering a habeas claim which a state court has denied due to "a procedural barrier to adjudication of the claim on the merits." *Walker v. Martin*, 562 U.S. 307, 315 (2011). This barrier to federal consideration is effective where "'the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Id*. "The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." *Id*. Regardless of whether it is a substantive rule or procedural barrier, the rule must be well established and consistently applied. *Id.* at 316. To be considered independent, the rule cannot "rest primarily on federal law, or . . . be interwoven with the federal law." *Cooper v. Neven*, 641 F.3d 322, 332 (9th Cir. 2011). Even if the rule in question is independent and adequate, a petitioner may still have his claim reviewed if he can show (1) cause for the default and actual prejudice resulting from the purported violation of federal law; or (2) that the failure to consider his claims would result in a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

/////

/////

### b. **Juror Misconduct Claims**

The Sixth Amendment right to a jury trial "guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). *See also Ross v. Oklahoma*, 487 U.S. 81, 85 (1988); *Green v. White*, 232 F.3d 671, 676 (9th Cir. 2000). Due process requires that the defendant be tried by "a jury capable and willing to decide the case solely on the evidence before it." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). Jurors are objectionable if they have formed such deep and strong impressions that they will not listen to testimony with an open mind. *Irvin*, 81 S. Ct. at 1642 n.3. Not every incident of juror misconduct requires a new trial, however. *United States v. Klee*, 494 F.2d 394, 396 (9th Cir. 1974). "The test is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial." *Id.* A petitioner is entitled to habeas relief on this ground only if it can be established that constitutional error had "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993); *Sassounian v. Roe*, 230 F.3d 1097, 1108 (9th Cir. 2000).

### 2. **Analysis**

Respondent argues that federal review of petitioner's juror misconduct claim is barred because the Court of Appeal's conclusion that the claim was forfeited is an independent and adequate determination of state law. ECF No. 11 at 16. This court agrees. As noted above, the Court of Appeal determined that petitioner's juror misconduct claim was forfeited when he failed to seek relief from the trial court. *Rowe-Manns*, 2014 WL 7334314, at *2–3. The Ninth Circuit has previously held that California's contemporaneous objection rule is independent and adequate. *Paulino v. Castro*, 371 F.3d 1083, 1093 (9th Cir. 2004); *Kelly v. Swarthout*, 599 F. App'x 267, 268 (9th Cir. 2015); *see also Tong Xiong v. Felker*, 681 F.3d 1067, 1075 (9th Cir. 2012) ("Accordingly, because [petitioner] failed to object to the court's post-trial investigation of the juror misconduct at trial, his forfeiture under California law constitutes a procedural default."). Petitioner has failed to rescue this claim from procedural default by showing either cause for the default (and actual prejudice) or that the failure to reach this claim would result in a fundamental miscarriage of justice.

Moreover, his claim would fail on the merits. *See Franklin v. Johnson,* 290 F.3d 1223, 1232 (9th Cir. 2002) ("[C]ourts are empowered to, and in some cases should, reach the merits of habeas petitions if they are . . . clearly not meritorious despite an asserted procedural bar."). While juror discussion of a case before the start of formal deliberations may constitute misconduct, it does not warrant reversal of a conviction unless it is accompanied by some showing of bias. *See United States v. Klee*, 494 F.2d 394, 396 (9th Cir. 1974) ("The important thing is not that jurors keep silent with each other about the case but that each juror keep an open mind until the case has been submitted to the jury."), *cert. denied*, 419 U.S. 835 (1974). Here, petitioner claims that several jurors vaguely lamented that the trial was a waste of time and another wondered aloud as to where Brandi was struck. ECF No. 1 at 8-9. Neither statement is, on its face, indicative of bias or an inability of these jurors to keep an open mind and decide the case only on the basis of the evidence presented and only after hearing all of the evidence and the trial court's instructions, and petitioner has failed to otherwise demonstrate that these premature discussions had a substantial or injurious effect on the jury's verdict. *See Belmontes v. Brown*, 414 F.3d 1094, 1124-25 (9th Cir. 2005) (petitioner failed to demonstrate prejudice flowing from juror misconduct because he did not allege facts "other than that premature deliberations took place"), rev'd on other grounds, *Ayers v. Belmontes*, 549 U.S. 7 (2006).

Based on the foregoing, this claim should be denied.

**B.     Instructions on Superseding Cause**

Next, petitioner contends that the jurors raised questions about causation during their deliberation, but the trial court failed to give the jury sufficient instruction, sua sponte, on the issue of superseding cause. ECF No. 1 at 4. The Court of Appeal rejected these arguments:

> Defendant contends the trial court committed reversible error by failing to instruct the jury, sua sponte, on superseding cause. The purported superseding cause being "the attack by the small, teenage girl, and not the earlier punch by [defendant], was the cause of Brandi's serious injuries." We conclude the instructions given were correct statements of the law of causation applicable to the evidence in this case, and there was absolutely no evidentiary basis for an instruction on superseding cause.

/////

Defendant's contention arises as follows. After being instructed and retiring to deliberate, the jury requested additional instructions on causation. The court prepared a draft of the response it intended to give and showed it to counsel. Defendant requested the court include language that "the serious injury was a normal and ... reasonably foreseeable result of Defendant's original act." The court declined to add such language because it believed the instructions it was providing were adequate and less confusing.

The court then instructed the jury: "The criminal law has its own particular way of defining cause. A cause of the serious bodily injury is an act that sets in motion a chain of events that produces as a direct, natural and probable consequence of the act the serious injury and without which the serious injury would not occur. [¶] There may be more than one cause of the serious injury to Brandi [M.]. When the conduct of two or more persons contributes concurrently as a cause of the serious injury, the conduct of each is a cause of that serious injury if that conduct was also a substantial factor contributing to it. A cause is concurrent if it was operative at the moment of the serious injury and acted with another cause to produce the serious injury. [¶] If you find that the defendant's conduct was a cause of the serious injury to Brandi [M.], then it is no defense that the conduct of some other person contributed to that injury. [¶] However, if you have a reasonable doubt that the defendant's conduct was a cause of serious injury to Brandi [M.], as defined above, then you must find the defendant not guilty."

Defendant argues the foregoing instruction was deficient because it failed to take into account that while there was substantial evidence from which the jury could find that defendant's striking Brandi caused her serious bodily injury, there was also substantial evidence that "the conduct of the small, teenage girl violently hitting and kicking Brandi was a superseding cause which exonerated [defendant] of culpability."

Defendant's argument demonstrates a basic misunderstanding of the defense provided by an intervening superseding cause. "In law, the term 'superseding cause' means 'an independent event [that] intervenes in the chain of causation, producing harm of a kind and degree so far beyond the risk the original [wrongdoer] should have foreseen that the law deems it unfair to hold him responsible.'" (*People v. Brady* (2005) 129 Cal.App.4th 1314, 1325.) In other words, suppose the defendant commits a crime (first crime) and the first crime sets the stage for a third party to commit a separate crime (second crime). If the People believe that the commission of the second crime was a reasonably foreseeable consequence of the first crime, the People will not only charge the third party with the commission of the second crime, but they will also charge the defendant with the second crime. If so charged, the defendant may assert, as a defense to the second crime, that the third party's commission of the second crime was NOT a reasonably foreseeable consequence of the defendant's commission

12

of the first crime, but instead it was an intervening act which relieved defendant of responsibility for the second crime. Thus, defendant's liability for the second crime turns on the trier of fact's determination of whether the second crime was or was not reasonably foreseeable, but either way, that determination has nothing to do with defendant's liability for the first crime.

*People v. Cervantes* (2001) 26 Cal.4th 860, cited multiple times by defendant in his briefs, is a prime example of the applicability of the theory of an intervening superseding act. Cervantes, a Highland Street gang member (Highland Street) got into a dispute with Cisneros, an Alley Boys gang member (Alley Boys) at a large party. Linares (Alley Boys) attempted to defuse the situation and Cervantes shot him in the chest. A melee erupted and gang challenges were exchanged. A group of Alley Boys saw Cabrera (Highland Street) drive off in his car and fired a volley of shots, killing him. (*Id*. at p. 863.)

Cervantes was charged with, inter alia, the murder of Cabrera and attempted murder of Linares. (*People v. Cervantes*, *supra*, 26 Cal.4th at pp. 864, fn. 3, 865.) A gang expert testified that both gangs would be expected to be armed, the shooting of Linares would be considered a major disrespect to the Alley Boys, the Alley Boys would be expected to avenge the shooting quickly, and, therefore, the shooting of Cabrera was a reasonably foreseeable consequence of Cervantes's actions. (*Id*. at pp. 863–864.) Cervantes was convicted of both charges, the theory of the murder charge being that the fatal shooting of Cabrera was a reasonably foreseeable event following Cervantes's shooting of Linares. (*Id*. at p. 864, fn. 3)

The California Supreme Court reversed Cervantes's murder conviction, observing: "In short, nobody forced the Alley Boys' murderous response in this case, if indeed it was a direct response to [Cervantes's] act of shooting Linares. The willful and malicious murder of Cabrera at the hands of others was an independent intervening act on which [Cervantes's] liability for the murder could not be based." (*People v. Cervantes*, *supra*, 26 Cal.4th at p. 874.)

Of relevance to the present case, the Supreme Court reversed Cervantes's conviction of murder, but did not reverse Cervantes's conviction of attempted murder of Linares, which it most certainly would have done if defendant's theory of the applicability of an intervening superseding cause was correct.

Consequently, there was no evidentiary basis for giving an instruction on an intervening superseding cause.

*Rowe-Manns*, 2014 WL 7334314, at *3–5. This claim was presented in a petition for review to

/////

13

the California Supreme Court which was summarily denied. Lodged Document "Petition for Review"; Lodged Document "Denial of the Petition for Review".

### 1. Applicable Legal Standards

Jury instructions are generally matters of state law and, as such, federal courts are bound by a state appellate court's determination that a particular instruction was not warranted under state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). As such, "[f]ailure to give [a jury] instruction which might be proper as a matter of state law," by itself, does not merit federal habeas relief." *Menendez v. Terhune*, 422 F.3d 1012, 1029 (9th Cir. 2005) (quoting *Miller v. Stagner*, 757 F.2d 988, 993 (9th Cir. 1985)). In order to warrant federal habeas relief, a challenged jury instruction "cannot be merely undesirable, erroneous, or even universally condemned, but must violate some due process right guaranteed by the fourteenth amendment." *Cupp v. Naughten*, 414 U.S. 141, 146 (1973) (internal quotations omitted). A challenge to a trial court's jury instructions is reviewed under the standards in *Brecht*, 507 U.S. at 637 – that is, whether the error had a substantial and injurious effect in determining the jury's verdict. *See California v. Roy*, 519 U.S. 2, 5 (1996).

### 2. Analysis

As a threshold matter, any contention that either the trial court or the Court of Appeal erred in their application of state law is not cognizable on federal habeas review. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *see Estelle*, 502 U.S. 62 at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). The only relevant question is whether the trial court's failure to offer superseding cause instructions sua sponte violated petitioner's due process rights.

Next, the court concludes that petitioner's due process rights were not violated for several reasons. First, a petitioner may not transform a state law claim into a federal one merely by asserting a vague and conclusory due process violation associated therewith. *See Langford v.*

*Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) ("[Petitioner] may not, however, transform a state-law issue into a federal one merely by asserting a violation of due process."). Second, there is no clearly established federal law requiring a trial court to offer a specific instruction sua sponte.[5] *See Namet v. United States*, 373 U.S. 179, 190 (1963) ("We see no reason to require such extravagant protection against errors which were not obviously prejudicial and which the petitioner himself appeared to disregard."); *see also Drew v. Scribner*, 252 F. App'x 815, 818 (9th Cir. 2007) (holding that there are no Supreme Court cases holding that states are constitutionally required to give defense instructions sua sponte). Third, this court concludes that the trial court's decision not to offer the requested instruction, even if erroneous, did not have a substantial and injurious effect on the jury's verdict. There was substantial testimony indicating that petitioner struck Brandi in the face and caused her to hit her head on the street curb, thereby causing her serious bodily injuries[6] – two fractured facial bones and a lost tooth. Lodged Document ("Reporter's Transcripts, Vol. 1") at 220-221; Lodged Document ("Reporter's Transcripts, Vol. 2") at 319; 431-432; 444-445; 457-458; *See Brecht*, 507 U.S. at 639 (finding trial error harmless where "the State's evidence of guilt was, if not overwhelming, certainly weighty" and "other circumstantial evidence . . . also pointed to petitioner's guilt"). If the jury believed otherwise, that is if they concluded that the teenage girl was the sole cause of Brandi's serious injuries—or had a reasonable doubt in that regard, they were bound to acquit petitioner under the instructions they were given, which stated "if you have reasonable doubt that the defendant's conduct was a cause

/////

---

[5] At trial, petitioner's counsel did request that the court's supplementary causation instructions include language specifying that the serious injury to Brandi be "a normal and reasonable result of the defendant's original act." Lodged Document ("Reporter's Transcripts, Vol. 2") at 537. Petitioner subsequently acknowledged, by way of his appellate brief, that this language would not have been sufficient on its own. Lodged Document ("Third Appellate District Court of Appeal, Appellant's Opening Brief") at 34. There is no indication that trial counsel ever explicitly requested a superseding cause instruction, however.

[6] The jury's instructions defined the term 'serious bodily injury' as "a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement." Lodged Document ("Clerk's Transcripts, Vol. I") at 204.

15

of serious injury to Brandi Marshall, as defined above, then you must find the defendant not guilty." Lodged Document ("Clerk's Transcripts, Vol. I") at 217.[7]

### C. Ineffective Assistance of Counsel

Petitioner's third claim is that his trial counsel was ineffective in failing to request an evidentiary hearing on juror misconduct and an instruction on superseding cause. ECF No. 1 at 5. The Court of Appeal rejected both ineffective assistance claims. With respect to counsel's failure to request an evidentiary hearing:

> Defendant also contends that his counsel's failure to move for an inquiry regarding the jury misconduct was ineffective assistance of counsel. No ineffective assistance of counsel has been established.
>
> "In considering a claim of ineffective assistance of counsel, it is not necessary to determine 'whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" (*People v. Mesa* (2006) 144 Cal.App.4th 1000, 1008.) It is defendant who bears the burden of demonstrating a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*People v. Ledesma* (2006) 39 Cal.4th 641, 746.)
>
> Defendant dedicates his entire argument to demonstrating that his counsel's failure to remind the court to investigate the claim of juror misconduct fell below what is expected of a reasonably competent attorney. On the contrary, we believe defense counsel could have had a reasonable tactical basis for not pursuing the issue further, given that what counsel heard tended to show juror skepticism toward the merits of the prosecution's case. In other words, defense counsel could have reasonably decided to "let sleeping dogs lie" because the views expressed by the juror favored defendant. In any event, to demonstrate ineffective assistance of counsel, defendant must also establish that, but for his attorney's deficiency, he would have obtained a more favorable result, i.e., defendant was prejudiced. Having failed to even attempt to make that showing, defendant's ineffective assistance argument is rejected.

*Rowe-Manns*, 2014 WL 7334314, at *3. And, with respect to counsel's failure to request a

---

[7] As the trial court noted in its instructions, it was no defense that *both* petitioner and the teenage girl contributed to Brandi's serious injury. Lodged Document ("Clerk's Transcripts, Vol. I") at 217; *see People v. Wattier*, 51 Cal.App.4th 948, 953, 59 Cal. Rptr. 2d 483 (1996) ("Facts attacking legal causation are only relevant if the defendant's act was not a substantial factor in producing the harm or injurious situation.").

16

superseding cause instruction:

> Defendant also argues that his counsel's failure to obtain an instruction on an intervening superseding event, being the cause of Brandi's injuries, deprived the jury of the "adjudication of a potentially meritorious defense." For reasons just explained, defendant was not entitled to any such instruction. Accordingly, counsel's failure to request such an instruction could not be the basis supporting an ineffective assistance claim.

*Id*. at 5. Both of these claims were included in a petition for review submitted to the California Supreme Court which was summarily denied. Lodged Document "Petition for Review"; Lodged Document "Denial of the Petition for Review".

### 1. **Applicable Legal Standards**

The clearly established federal law governing ineffective assistance of counsel claims is that set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on a *Strickland* claim, a defendant must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." *Id*. at 687. Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." *Id*. at 687-88 (internal quotation marks omitted). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 562 at 104 (quoting *Strickland*, 466 U.S. at 687).

Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792.

"The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). Thus, in federal habeas proceedings involving "claims of ineffective assistance of counsel, . . . AEDPA review must be """doubly deferential""" in order to afford "both the state court and the defense attorney the benefit of the doubt." *Woods v. Donald*, U.S. , 135 S.

17

Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) (quoting *Burt v. Titlow*, 571 U.S. , , 134 S. Ct. 10, 13, 187 L. Ed. 2d 348 (2013)). As the Ninth Circuit has recently acknowledged, "[t]he question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Bemore v. Chappell*, 788 F.3d 1151, 1162 (9th Cir. 2015) (quoting *Richter*, 562 U.S. at 105). *See also Griffin v. Harrington*, 727 F.3d 940, 945 (9th Cir. 2013) ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard.") (quoting *Richter*, 562 U.S. at 101).

### 2. <u>**Analysis**</u>

First, as noted *supra*, petitioner has failed to show that the juror's pre-deliberation discussions of his case were indicative of bias. Absent any indication of bias against him, this court cannot conclude that trial counsel's failure to move for an evidentiary hearing on the misconduct prejudiced his defense under *Strickland*. Moreover, the Court of Appeal reasonably determined that trial counsel's decision not to pursue this issue could have been tactical. It noted that some of the jurors' comments were potentially indicative of skepticism toward the prosecution's case and trial counsel could have elected to "let sleeping dogs lie" in the hopes that this skepticism would benefit petitioner. *Rowe-Manns*, 2014 WL 7334314, at *3. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. In light of this highly deferential standard - which, as noted above, must be extended to both trial counsel and the state court's decision – petitioner is not entitled to relief on this claim.

Second, petitioner is not entitled to relief based on trial counsel's failure to request a superseding causation instruction. As previously stated, the jury's instructions already obliged them to acquit petitioner of battery with serious bodily injury if they concluded that the cause of Brandi's serious injuries was the teenage girl's attack. Accordingly, trial counsel's failure to request a superseding cause instruction did not prejudice the defense under *Strickland*. Moreover, the Court of Appeal – whose conclusions of state law should not be second-guessed by this court

18

– determined that a superseding cause instruction was not legally applicable to the facts underlying petitioner's case. *Rowe-Manns*, 2014 WL 7334314, at *3-5. As such, trial counsel's failure to request such an instruction was not deficient performance. *See Wildman v. Johnson*, 261 F.3d 832, 840 (9th Cir. 2001) (failure to raise a meritless argument does not constitute ineffective assistance).

### D. Judicial Misconduct

The final claim is that the sentencing judge – Judge David W. Abbott - failed to perform his "ministerial" duties by declining to readdress petitioner's sentence. ECF No. 1 at 5. Petitioner notes that, at sentencing, Judge Abbott indicated that he would consider a petition to modify the sentence if petitioner demonstrated good behavior while in custody. Lodged Document ("Reporter's Transcripts, Vol. 3") at 666. Petitioner asserts that he has demonstrated good conduct but has not been granted any relief. ECF No. 1 at 5. This claim, as respondent notes, was not presented to the state's highest court and is unexhausted. *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994) ("A petitioner has not satisfied the exhaustion requirement unless he has fairly presented his claim to the highest state court."). It is also plainly without merit, however, and the court will dispose of it on that basis. *Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005) (an application for habeas corpus may be denied on the merits even if unexhausted in state court).

The court interprets this claim as arising under a theory of judicial misconduct insofar as it does not attack the legality of the original sentence. This claim fails because it does not allege any violation of federal law or the United States constitution. *Franzen v. Brinkman*, 877 F.2d 26 (9th Cir. 1989) ("A habeas petition must allege the petitioner's detention violates the Constitution, a federal statute, or a treaty."). Petitioner's claim does not even rest on any particular state law. Rather, he appears to argue that Judge Abbott's obligation to reevaluate his sentence arises out of some fundamental notion of fairness, i.e. that he make good on his word. This argument, while perhaps understandable from petitioner's perspective, simply does not give rise to any cognizable federal habeas claim. Moreover, petitioner has already received a response from the superior court indicating that its ability to modify his sentence is limited and that any such modifications

/////

must instead be addressed by the Board of Prison Terms or the Board of Parole Hearings. ECF No. 1 at 12.

### E. Motion for Default Judgment

Lastly, on January 3, 2017, petitioner filed a motion for default judgment (ECF No. 19) arguing that respondent had failed to respond to his traverse. *Id*. at 1-2. There is, however, no requirement that respondent do so. *See* Rules Governing § 2254 Cases In The United States District Courts, Rule 5. His motion is therefore denied.

**IV. Conclusion**

Accordingly, it is ORDERED that petitioner's motion for default judgment (ECF No. 19) is denied. Further, it is RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: July 13, 2017.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE